2010 WY 68

**Bruce GILBERT, Appellant (Petitioner),**

v.

**BOARD OF COUNTY COMMISSIONERS OF PARK COUNTY, Appellee (Respondent).**

No. S–08–0202.

Supreme Court of Wyoming.

May 26, 2010.

Representing Appellant: Dawn R. Scott and Laurence W. Stinson of Bonner Stinson, P.C., Cody, Wyoming. Argument by Ms. Scott.

Representing Appellee: James F. Davis and Bryan A. Skoric of the Park County Attorney's Office, Cody, Wyoming. Argument by Mr. Davis.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1]   Bruce Gilbert, owner of a 21.85–acre parcel of property approximately one mile southeast of Meeteetse, Wyoming, seeks review of the decision of the Board of County Commissioners of Park County, which the district court affirmed, that denied his request for a land use variance after extended public hearings. We affirm the Board's decision.

## STATEMENT OF THE ISSUES

[¶ 2]   In Gilbert's principal brief, he presents these issues:

A.   Is BOCC Resolution No.2006–5 unsupported by substantial evidence and/or arbitrary and capricious?

B.   Is BOCC Resolution No.2007–72 unsupported by substantial evidence and/or arbitrary and capricious?

C.   Did the District Court set forth erroneous findings in its July 30, 2008 Decision Letter?

D.   Did the District Court err in finding that the public hearings were not a contested case proceeding?

The Board responds with this statement:

I.   The Board's denial of Appellant's variance is supported by substantial evidence.

II.   The Board properly redeliberated the issues as required by the district court and the Board's decision is not arbitrary and capricious.

III.   Appellant failed to provide a transcript of the proceedings and therefore this Court can accept the findings of the district court as the basis for deciding the issues.

IV.   The district court's finding was correct where the district court stated that Gilbert could have appealed the planning coordinator's decision that he needed a variance.

V.   The district court did not err in finding that the proceedings before the Board were not held as contested case hearings.

Gilbert filed a reply brief asserting these matters:

A.   Does the lack of a transcript require this Court to accept the findings of the District Court as the sole basis for deciding the issues?

B.   Does an incomplete record at the administrative level continue to prejudice Appellant?

C.   Was the Board's decision to deny Gilbert's variance arbitrary and capricious?

D.   Did the District Court [err] in finding that Appellant could have appealed the planning coordinator's decision that he needed a variance?

E.   Did the District Court [err] in finding that the public hearings were not a contested case proceeding?

[¶ 3]   Before proceeding further, we must comment briefly on Gilbert's reply brief statement of the issues. We observe that Issue C, whether the Board's decision to deny the variance request was arbitrary and capricious, repeats that same issue raised in Gilbert's principal brief and addressed in the Board's brief. It is not, therefore, a new issue raised by the Board in its brief. Similarly, Issue E, whether the district court erred in finding that the public hearings were not contested case hearings, repeats that same issue raised in Gilbert's principal brief and addressed in the Board's brief. It is not, therefore, a new issue raised by the Board in its brief. We remind counsel that a reply brief is limited to new issues and arguments raised by an appellee's brief; failure

to comply with this requirement may subject counsel to sanctions under this Court's rules. W.R.A.P. 7.03.

## FACTS

[¶ 4] In 1985, under the then-existing Park County zoning regulations, the 21.85–acre parcel in question in this appeal was owned by Mr. and Mrs. William Spuhl (Spuhl) and was zoned light industrial/manufacturing by virtue of Land Use Change (LUC)–59. In September 2000, the Board adopted a new and more comprehensive zoning resolution that superseded the Board's former method of establishing land use changes on a case-by-case basis. The 2000 zoning resolution established zoning districts county-wide and identified uses that may occur within each zoning district. That resolution also provided that the previous land use changes, such as LUC–59 allowing light industrial/manufacturing, would expire on September 1, 2005, if they had been abandoned, had become inactive, or had not been substantially advanced during the five-year period following September 2000.

[¶ 5] On May 10, 2005, four months before the expiration of LUC–59, Spuhl sold the 21.85–acre parcel in question to Gilbert. In July 2005, Park County's Planning and Zoning Coordinator Bo Bowman, having determined that the land use changes of approximately sixty property owners were set to expire on September 1, 2005, sent letters to those owners informing each owner of the approaching expiration date and of each owner's need to request a variance to extend the expiration date. Gilbert received Bowman's letter and responded with a handwritten letter which Bowman received on August 4, 2005. In Gilbert's letter he stated in pertinent part, "At the present time I do not know what is the best use of this parcel. I hope you will allow me to retain this zoning till I am able to determine its best use." Gilbert submitted a $300.00 check as payment for a variance application. At that time, Gilbert did not question Bowman's determination that the LUC–59 designation for Gilbert's 21.85–acre parcel qualified for expiration. The 2000 zoning resolution provides that persons can appeal any action of the Planning Coordinator to the Board. Park Cty. Zoning Resolution, Div. 4–300, Sections 4–305 and 4–310 (Sept. 1, 2000). Specifically, Section 4–310 of the zoning resolution provides:

Any aggrieved person or any officer, department, or board of the County affected by any decision of the Planning Coordinator may appeal to the Board of County Commissioners. Appeals shall be made within 10 days of notice of any action by filing with the Board's Administrative Assistant a written notice of appeal specifying the grounds for the appeal. The Planning Coordinator shall immediately transmit to the Board the complete record of the action from which the appeal is taken.

Gilbert did not appeal Bowman's decision that the LUC–59 designation for his 21.85–acre parcel was set to expire on September 1, 2005.

[¶ 6] On October 18, 2005, the Park County Planning and Zoning Commission held a public hearing after which it recommended to the Board that Gilbert's variance request be denied. The Board subsequently held public hearings on November 15, 2005, and January 3, 2006, concerning Gilbert's variance request. The Board held these hearings in accordance with the provisions of the 2000 zoning resolution addressing variance standards. Those standards are:

No variance from the strict application of any provision of this zoning resolution may be granted unless there are special circumstances or conditions which are peculiar to the land, building, or structure for which the variance is sought and do not apply generally to land or buildings in the neighborhood, and have not resulted from any act of the applicant subsequent to the adoption of this zoning resolution; the circumstances or conditions are such that the strict application of the provisions of the zoning resolution would deprive the applicant of the reasonable use of the land, building, or structure, the granting of the variance is necessary for the reasonable use thereof and the variance as granted is the minimum variance that will accomplish this purpose; and the granting of the variance is in harmony with the general purposes and intent of the zoning resolution

and will not be injurious to properties in the vicinity or otherwise detrimental to the public welfare. The Board shall make written findings on each of these considerations.

Park Cty. Zoning Resolution, *supra*, Section 4–715. Gilbert did not request that the Board's hearings be conducted as contested case "trial-type" proceedings under the Wyoming Administrative Procedure Act. Wyo. Stat. Ann. § 16–3–101 through 115 (Lexis-Nexis 2009). The Board's hearings were electronically recorded on audiocassette tapes, two tapes from the hearing on November 15, 2005, and one tape from the hearing on January 3, 2006. The latter tape contains only part of the hearing, as that tape was taped over by other Board proceedings unrelated to Gilbert. Board minutes pertaining to the hearing were made.

[¶ 7] At these hearings, the Board considered the recommendation of the Planning and Zoning Commission; Gilbert's comments concerning his justification for wanting the variance and concerning his position that a variance was unnecessary because Spuhl's business activities on the parcel established that the light industrial/manufacturing use had not been abandoned, had not become inactive, and had been substantially advanced; Spuhl's evidence offered on Gilbert's behalf; and written and oral comments from neighboring property owners. The evidence and comment concerning Spuhl's use of the parcel was in conflict. The evidence in favor of Gilbert and Spuhl on this matter was that he had operated a gun-ordering, gun-cleaning, and gun and ammunition reloading business on the parcel; he had used a generator to supply electricity to the property; in Spuhl's opinion, it was known in the community that he operated his business on the parcel; and he produced a copy of his federal firearms license allowing him to deal in firearm sales. However, Spuhl offered no business records to support his assertions and no one from the community testified in support of those assertions. Written comments and oral statements from several neighboring property owners were received by the Board in opposition to Spuhl's claim that he had used the parcel as necessary under LUC–59. A Mr. Long stated that no such business activity occurred; instead, Spuhl cared for his horses on the parcel and used the parcel as a private shooting range. A Ms. Placzkowski stated she had not seen any business activity on the parcel as she passed by the parcel several times a day for the past two years. A Mr. Walter stated that the parcel is in a well-established residential area, that in his six years living near the parcel he had seen no evidence of a business operation, and that the only people he had seen on the parcel were the Spuhls when they stopped by to feed their horses. The Planning and Zoning Coordinator stated that if the Board denied Gilbert's variance request, Gilbert could pursue numerous uses of the parcel, some by virtue of a simple zoning permit and some by virtue of a special use permit. In addition to the above-mentioned material, the Board received information from two of its members who had visited the parcel which indicated that the two small outbuildings on the parcel showed no indication they had been used for commercial purposes.

[¶ 8] On January 17, 2006, the Board adopted Resolution # 2006–5, denying the variance request, and stated findings and conclusions concerning the past use of the parcel and whether Gilbert's variance request met the zoning resolution criteria applicable to granting the variance. On February 7, 2006, Gilbert filed with the district court a petition for review, requesting that the court remand the issue whether a variance was necessary because the record was incomplete. On June 14, 2007, the court remanded the matter to the Board, explaining that the court could not make a fully reasoned decision with an incomplete record and ordering the Board to not reopen the evidentiary record but to provide a record of the Board's deliberation in denying the variance request. On remand, the Board again deliberated and adopted, on October 16, 2007, Resolution # 2007–72, which set forth findings and conclusions supporting the Board's decision to deny the variance request, and states as follows:

### RESOLUTION # 2007–72

**TITLE:** *REDELIBERATIONS ON ACTION DENYING VARIANCE TO BRUCE GILBERT REGARDING LAND*

USE CHANGE 59 ON A 21.85 ACRE+/PARCEL DESCRIBED AS A PORTION OF THE SE1/4 OF SECTION 10, T48N, R100W.

WHEREAS, in October 1986, the Board of County Commissioners (Board) granted Land Use Change (LUC)–59 to allow light industrial development on a parcel of land approximately 21.85 acres in size described as a portion of the SE1/4 of Section 10, T48N, R100W; and

WHEREAS, the current owner of that parcel, Bruce Gilbert, applied for a variance to extend the expiration date of said LUC beyond September 1, 2005 as set forth in the Park County Zoning Resolution at Section 3–210(F)(1) & (6); and

WHEREAS, the Board held public hearings on said request for variance on November 15, 2005 and January 3, 2006, and in addition to taking testimony at the public hearings, two of the three members of the Board made independent site visits to the parcel of land to view the circumstances on the ground; and

WHEREAS, on January 17, 2006 the Board made its decision denying the variance and entered a resolution to that effect. Mr. Gilbert thereafter appealed that decision to the Fifth Judicial District Court, Park County, Wyoming. After briefing, that Court sent the matter back to the Board not for the purpose of developing new evidence and testimony but for the purpose of redeliberating and better stating their reasons for their decision; and

WHEREAS, on October 9, 2007, the Board as it existed on January 17, 2006, met and redeliberated the matter, adopted its earlier findings and conclusions, and made the following amended findings and conclusions:

### Findings of Fact.

1. The Park County Planning Coordinator in July 2005 provided landowner Bruce Gilbert with notice that his undeveloped Land Use Change (LUC) Number 59 was scheduled to expire on September 1, 2005 pursuant to Park County zoning regulations unless Mr. Gilbert applied for a variance to extend the expiration date.

2. Thereafter, Mr. Gilbert on July 13, 2005 requested a variance asking that his LUC expiration date be extended.

3. From information learned from site visits by Board members, only two relatively small outbuildings exist on the property and that these buildings do not show any indication that they have been utilized for commercial purposes to any meaningful extent.

4. Testimony from members of the public indicated that no commercial activity has occurred at the above-described location:

- Bobby Long testified that he knows the former property owner William Spuhl. William Spuhl testified that he operated a gun cleaning/reloading type business on the property, however, Bobby Long testified that William Spuhl lived in Bobby Long's RV park in Meeteetse, Wyoming for approximately one year and that during that time William Spuhl only fed his private animals on the subject property. Mr. Long also owns property near the subject property and has not at any time seen any type of business activity on the property. He testified that William Spuhl did do some firearms transactions out of the premises of a restaurant in Meeteetse but not on the property in question to his knowledge;

- Don Walter, who owns property near the subject property, submitted comments which state that he lived near the subject property for six years and did not see any kind of business operated on the subject property and that all he saw was William Spuhl feed his animals on the property;

- Pauline Placzkowski testified that she has lived in the area of the subject property for approximately two years, drives by it every day, and has never seen any evidence of a business being operated on the property;

- Diane Chapman testified that she lives in the area of the subject property and that she was unaware of any business activity that was substantially advanced on the property.

5. Testimony at public hearings indicated that the buildings on the property are not served by electricity except for electricity generated by a portable generator.

6. The former owner testified and submitted an affidavit indicating he had operated a firearm/reloading type business on the property, however, he provided no receipts indicating the operation of the business or other documents supporting any business activity having occurred on the property.

7. The above-described property lies within the GR–M zoning district which allows for all uses listed in the Park County Zoning Resolution including the use he testified he had used the property assuming the property owner, Mr. Gilbert in this case, applies for and receives the proper permit.

8. The applicant and/or his predecessors in interest have had more than 19 years since the LUC was granted to conduct the uses allowed by the LUC and that during that extensive length of time, based on the testimony and comments presented, no business has been substantially advanced on the subject property; and

**THEREFORE,** the Board concludes as follows:

1. In order to grant a variance the Board must make affirmative findings on all four of the following approval standards as set forth in the Park County Zoning Resolution Section 4–715:

   a. Special circumstances exist which are peculiar to the land, building, or structure for which the variance is sought and which do not apply generally to land or buildings in the neighborhood, and have not resulted from any act of the applicant subsequent to the adoption of the zoning resolution;

   b. The circumstances or conditions are such that the strict application of the provisions of the zoning resolution would deprive the applicant of the reasonable use of the land, building or structure;

   c. The granting of the variance is necessary for the reasonable use of the land, building, or structure and the variance as granted is the minimum variance that will accomplished this purpose; *and*

   d. The granting of the variance is in harmony with the general purposes and intent of the zoning resolution and will not be injurious to properties in the vicinity or otherwise detrimental to the public welfare; and

2. The burden of proof is on the applicant for a variance to show how the above approval standards can be met. Park County Zoning Resolution Section 4–710.

3. Regarding approval standard No. 1, based on the above findings, no special circumstances exist which are peculiar to the property and do not apply generally to other property in the neighborhood. The Board listened to testimony regarding how the LUC had been substantially advanced by the alleged business activity on the property and considered such testimony in the context of whether special circumstances existed. Based on the testimony presented and the site visits by Board members, the Board concludes that the business purposes of the LUC have not been substantially advanced. The Planning Coordinator made the same decision when he informed Mr. Gilbert that his undeveloped LUC was subject to expiration unless he sought a variance from the expiration date. The Planning Coordinator's decision was not appealed but was nonetheless the proper decision. For these reasons and for the reason that the applicant has failed to show how the approval standard can be met, the Board concludes that no special circumstances exist as set forth in approval standard number 1 above.

4. Regarding approval standard No. 2, the Board concludes that based on the above findings the circumstances in this case are not such that the strict application of the zoning resolution would deprive the applicant of the reasonable use of the property as this property can be developed for multiple uses as defined in the zoning resolution for the GR–M zoning classification to include uses alleged to have occurred on the property in the past.

5. Regarding approval standard No. 3, as set forth above, the denial of this variance will not deprive the applicant of the rea-

sonable use of the property and therefore granting the variance is not necessary for the reasonable use of the property.

6. Regarding approval standard No. 4, the Board concludes that this standard is not applicable because the Board has herein denied the variance. It is unnecessary to determine whether granting the variance is in harmony with the purposes and intent of the zoning resolution or whether granting the variance would be injurious to properties in the vicinity or to the general public. Mr. Gilbert did not present evidence to show how this approval standard could be granted.

NOW, THEREFORE, BE IT RE-SOLVED that based on the foregoing, the Board, as it existed at the time of the initial decision, and after redeliberation, hereby adopts these redeliberated findings and conclusions and submits them to the Court.

ADOPTED by the Board of County Commissioners as existed on January 17, 2006, this 16th day of October, 2007.

[¶ 9] Once more Gilbert's petition for review came before the district court and the parties filed supplemental briefs. On May 3, 2008, the district court and counsel discussed the question whether the Board's several public hearings were contested case "trial-type" proceedings under the Wyoming Administrative Procedure Act; and the court ordered briefing on that question. After receiving that additional briefing and reviewing the Board's resolutions in light of the record, the district court issued its decision letter on July 30, 2008, explaining its affirmance of the Board's decision to deny Gilbert's variance request and explaining its decision that the Board's public hearings on Gilbert's variance request did not result in a de facto contested case "trial-type" proceeding, as argued by Gilbert, which would have required a verbatim record of those hearings. Wyo. Stat. Ann. § 16–3–107(p) (LexisNexis 2009). Gilbert timely sought this Court's review of the district court's order dated July 30, 2008, affirming the Board's decision.

## DISCUSSION

### I. Standard of Review

[¶ 10] The issues before the Court in this appeal require application of our standard for reviewing the actions of an administrative agency. Recently we stated and explained that standard in *Northfork Citizens for Responsible Development v. Board of Cty. Comm'rs of Park Cty.*, 2010 WY 41, ¶¶ 16–17, 228 P.3d 838, 844–45 (Wyo.2010):

That standard requires that we give no special deference to the decision of the district court, but consider the case as if it came directly from the agency. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 9, 188 P.3d 554, 557 (Wyo.2008). The statutory limits of our review are set forth in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2009):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

In *Dale*, we noted that this statute actually contains several different standards of review, and that all are not applicable in any given instance. 2008 WY 84, ¶¶ 8–26, 188 P.3d at 557–62. We will not repeat

that detailed analysis here. Rather, we will simply parse the statute and note that a reviewing court must set aside agency action where the agency: (1) acted arbitrarily; (2) acted capriciously; (3) acted contrary to law; (4) abused its discretion; (5) violated a constitution; (6) acted beyond its statutory authority; (7) failed to observe legally required procedures; or (8) made findings or reached conclusions unsupported by substantial evidence. We have defined "arbitrary and capricious" in the administrative agency review context as follows:

> The arbitrary and capricious test requires the reviewing court to review the entire record to determine whether the agency reasonably could have made its finding and order based upon all the evidence before it. The arbitrary and capricious standard is more lenient and deferential to the agency than the substantial evidence standard because it requires only that there be a rational basis for the agency's decision.

*Id.* at ¶ 12, [188 P.3d] at 559 (internal citations and quotation marks omitted). In turn, we defined the substantial evidence test as follows:

> "In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions...."

*Id.* at ¶ 11, [188 P.3d] at 558 (quoting *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 12, 49 P.3d 163, 168 (Wyo.2002)).

## II. Overview of the Issues

[¶ 11] Upon consideration of the parties' statements of the issues, we have separated them for purposes of review as procedural issues and substantive issues. The procedural issues are whether the Board's public hearings became de facto contested case "trial-type" proceedings; whether we have a sufficient administrative record for judicial review; and the effect, if any, of Gilbert's failure to appeal the Planning Coordinator's alleged decision in his July 2005 letter to Gilbert that he needed to request a variance to extend the expiration date of the LUC–59 designation. The substantive issues are whether the Board's decisions, contained in Resolution # 2007–72, that a variance was necessary and that the variance request was denied, are supported by substantial evidence and are not arbitrary and capricious.

## III. Procedural Issues

### A. Whether the Board's public hearings became a de facto contested case "trial-type" proceeding.

[¶ 12] In his appellate briefing, Gilbert states that he has never claimed he was entitled to a contested case proceeding when the Board provided a public hearing to consider his variance request. As defined in the Wyoming Administrative Procedure Act, "contested case" means "a proceeding ... in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing...." Wyo. Stat. Ann. § 16–3–101(b)(ii) (LexisNexis 2009). Procedures in contested cases are set forth in Wyo. Stat. Ann. § 16–3–107 (LexisNexis 2009) and include, *inter alia*, "the proceeding including all testimony shall be reported verbatim stenographically or by any other appropriate means determined by the agency ...." § 16–3–107(p). Gilbert has not proposed that his variance request is a legal right and has cited no authority for that proposition. We observed in *Snake River Venture v. Bd. of Cty. Comm'rs, Teton Cty.*, 616 P.2d 744, 751 (Wyo.1980), there is no vested property right in a contemplated use of land subject to zoning. Our research indicates that no person has a legal right to a variance and they are to be granted sparingly. *Whelan v. Zoning Bd. of Appeals of Norfolk*, 430 Mass. 1009, 722 N.E.2d 969, 970 (2000). A zoning variance is equitable in nature and subject to the rules of equity. *Cooper Bros. Inv. Co. v. Ray*, 629 P.2d 796, 798 (Ok.Ct.App.1981) (citing *Twist v. Kay*, 434 P.2d 180, 186 (Ok. 1967)). According to Gilbert's variance re-

quest, he did not know what use he wanted to make of his parcel and simply wanted an extension of the expiration date concerning LUC–59 to have time to consider that use. He does not claim that he has a legal right to that extension. Because the Board was not determining a legal right in its proceeding concerning Gilbert's variance request, it was not conducting a contested case hearing as defined in § 16–3–101(b)(ii).

■ [¶ 13] Although Gilbert acknowledges that he never claimed he was entitled to a contested case proceeding, and the Board notes that he never requested one, he contends that the Board's actions during its several public hearings on his variance request "functioned as a constructive contested case proceeding." He asserts that the proceedings became contentious at the second hearing and that by the fourth and final hearing the Board was questioning the validity of his evidence. He maintains that the increasingly adversarial relationship between the Board and himself resulted in a de facto contested case proceeding. Because his variance request hearings resulted in a de facto contested case proceeding, he argues, the Board was required to provide a verbatim record; because no verbatim record was made, he concludes, the Board's decision denying his variance request must be reversed. Gilbert correctly observes that this Court has not addressed the issue of de facto contested case proceedings.

[¶ 14] In his effort to persuade this Court to recognize this de facto contested case concept, he offers an Oregon court of appeals decision and decisions from the Supreme Court of Hawaii. In *Anderson v. Bd. of Medical Examiners*, 95 Or.App. 676, 770 P.2d 947 (1989), the court reviewed an order of the medical examiners board revoking Anderson's license to practice medicine. *Id.* at 948. The board's order was based on Anderson's refusal to comply with a subpoena to attend an informal interview with the board; such refusal was grounds for revocation under Oregon statutory law. *Id.* Challenging this board's order, Anderson reasoned that the board had conducted a previous informal interview with her concerning the complaints about her practice methodologies; that the board's approach had become adversarial and had as-

sumed the character of a contested case; and that the proceedings were on the verge of becoming disciplinary. *Id.* Under Oregon statutory law, disciplinary proceedings involving license suspension or revocation require contested case procedures. *Id.* at n. 1. Rejecting Anderson's de facto contested case concept, the court explained that, because the investigatory informal interview never occurred, it could not conclude that the interview would have turned out to be a disciplinary proceeding requiring contested case procedures to protect Anderson's license to practice medicine. *Id.* at 949. The court observed that had the nature of the informal interview turned out to be a disciplinary proceeding with the board conducting a de facto contested case and issuing a reviewable disciplinary order, Anderson could have obtained redress by assigning error to the interview proceeding. *Id.* Gilbert states, without adequate explanation, that his situation is quite similar to Anderson's. We fail to see the similarity. Gilbert was requesting a variance as to which he had no vested property right; Anderson had a vested property right in her medical license which could be adversely affected by the medical examiners board's disciplinary action only after a statutorily required disciplinary proceeding to which contested case procedures attached. *Anderson* is not authority for the broad proposition that a board's public hearings on a variance request, as to which there is no vested right, mutates into a de facto contested case proceeding when matters become contentious and adversarial with the board questioning the validity of the evidence offered by the party requesting a variance.

[¶ 15] Gilbert next briefly points to *In re Application of Hawaiian Electric Company, Inc.*, 56 Haw. 260, 535 P.2d 1102, 1105 (1975), claiming the Supreme Court of Hawaii held that "a public hearing, conducted pursuant to public notice, is a 'contested case' within the meaning of HRS § 91–14" (which statute, Gilbert states, sets forth judicial review of contested cases). Actually, *Hawaiian Electric* did not so hold, but a case cited in that opinion did, *see East Diamond Head Ass'n v. Zoning Board*, 52 Haw. 518, 479 P.2d 796,

799 (1971) (without explanation, the court stated "[t]hat the public hearing was not a 'contested case' is without merit"). In *East Diamond Head*, the central issue was whether owners of land adjoining a parcel that had been issued a zoning variance to allow its use as a movie production location had standing to seek judicial review of the issuance of the variance following a public hearing in which the adjoining owners had participated but had not intervened. *Id.* at 797–98. The court held they were "persons aggrieved" by the zoning variance and, therefore, had standing to seek judicial review. *Id.* at 798. The concept of a de facto contested case is nowhere to be found in the court's opinion. Briefly returning to *Hawaiian Electric*, we note that it too is a standing case and not one involving a de facto contested case concept. Hawaiian Electric filed an application for a rate increase with the public utilities commission. The commission, after giving due notice, held contested case hearings on that application. 535 P.2d at 1104. A nonprofit corporation that used the utility's services and was concerned with environmental preservation and protection as well as an individual who subscribed to the utility's services sought but were denied intervention; however, they were granted participation status. *Id.* In that capacity, they submitted proposed cross-examination questions for adverse witnesses, presented limited testimony, discussed the case with commission staff members, and submitted proposed findings of fact and conclusions of law. *Id.* After the commission made its decision in favor of the utility's rate increase and the commission staff did not file an appeal, the nonprofit corporation and the individual subscriber claimed standing to seek judicial review of the commission decision. *Id.* The court held they were aggrieved by the commission's action and granted them standing to appeal. *Id.* at 1105–06. *Hawaiian Electric* does not support Gilbert's position.

[¶ 16] The final case that Gilbert relies on for the de facto contested case concept is *Pele Defense Fund v. Puna Geothermal Venture*, 77 Hawai'i 64, 881 P.2d 1210 (1994). Without providing the factual and legal context of that case, Gilbert states the court there addressed the issue of public hearings becoming contested cases when they were adversarial in nature. Gilbert's statement suggests that the court approved the concept of a de facto contested case when a public hearing becomes adversarial in nature. Our review of the factual and legal context of that case causes us to conclude that such a suggestion is incorrect. Nowhere in the opinion in that case does the court mention, let alone discuss, the de facto concept. Puna Geothermal Venture (PGV) applied to the Department of Health (DOH) for two authority-to-construct permits for a well field containing fourteen wells and a power plant. *Id.* at 1212. Under state law, DOH had discretionary authority to hold public hearings on PGV's application; however, several individuals requested contested case hearings and testified before DOH determined to grant or deny that request. *Id.* After the attorney general's office informed DOH that there was no legal mandate to grant a contested case hearing, DOH denied the request and later granted PGV's application for the two permits. *Id.* Pele Defense Fund (PDF) appealed DOH's decision to grant PGV's permits in circuit court. That court denied PGV's motion to dismiss the appeal. *Id.* at 1212–13. PGV appealed to the supreme court for a determination whether the circuit court had subject matter jurisdiction to entertain PDF's appeal of DOH's decision granting PGV's permits. *Id.* at 1213. The supreme court found the dispositive issue to be whether PGV's interest in obtaining an authority-to-construct permit constituted a property interest such that DOH's hearing was a contested case under applicable state law. *Id.* at 1214. The court agreed with PGV's assertion that a contested case is required when the agency denies PGV's proposed property use; and the court noted that, as a matter of constitutional due process, an agency hearing is also required where the issuance of a permit implicating an applicant's property rights adversely affects the constitutionally protected rights of other interested persons who have followed the agency's rules governing participation in contested cases. *Id.* Because DOH's public hearings involved PGV's effort to have its legal rights of land in which it held an interest declared over the objections of other landowners in the area, the court found those public hearings were contested cases. *Id.*

The court next considered whether those individuals who had requested contested case hearings had followed DOH's rules in that regard. *Id.* at 1215. Finding they had, the court held the circuit court properly exercised jurisdiction in the case. *Id.* The court then turned to consider whether some of those individuals had shown they had standing to request review of DOH's decision. *Id.* The court found that several of the individuals who claimed PGV's proposed activities would cause potential harm of diminished property values, deterioration of air quality, odor nuisance, and possible physical injury had clearly demonstrated sufficient threatened injury in fact to establish standing. *Id.* at 1216. The final element of the court's analysis was whether those individuals were involved in or participated in a contested case. *Id.* The court concluded that certain individuals had contested before DOH whether PGV's permits should be issued and thereby had satisfied the requirement of adversary participation. *Id.* at 1217. Thus, those individuals who had demonstrated sufficient participation and potential injury were entitled to seek judicial review of DOH's decision. *Id.* at 1218. In light of our review of *Pele Defense Fund*, we fail to see that it supports Gilbert's assertion of a de facto contested case concept. We decline to recognize that concept in this case.

**B.  Whether a sufficient administrative record exists for purposes of judicial review.**

[¶ 17] As provided in W.R.A.P. 12.07(b), the record in a non-contested agency case, such as this one, "shall consist of the appropriate agency documents reflecting the agency action and its basis." In an appeal of agency action, "the filing of the record ... in the supreme court shall be as in civil cases pursuant to [W.R.A.P.] 1.01, 3, 7, and 8." W.R.A.P. 12.11(b). Gilbert's designation reads as follows:

### APPELLANT'S DESIGNATION OF RECORD

COMES NOW Appellant Bruce Gilbert, by and through his counsel, Bonner Stinson, P.C., and hereby files and submits his Designation of Record pursuant to W.R.A.P. § 3.05(b), as follows in the case of *Bruce Gilbert v. Board of County Commissioners of Park County;* Supreme Court No. S–08–0202.

| | ITEM NO/PAGES |
|---|---|
| Resolution No. 2006-5 | 1-3 |
| Staff Report to the Park County Planning & Zoning Commission | 21 |
| Email from Bo Bowman to Don Walter | 19 |
| Park County Planning & Zoning Memorandum, November 9, 2005 | 31, 32 |
| Notice of Public Hearing | 33 |
| Affidavit of William Spuhl | 44, 45 |
| Audiocassette Tape, November 15, 2005 | 49, 50 |
| Audiocassette Tape, December 6, 2005 | 51, 54 |
| Audiocassette Tape, January 10, 2006 | 55 |
| December 6, 2005 County Commissioner Minutes | 53, 62 |
| January 3, 2006 County Commissioner Minutes | 71 |
| January 10, 2006 County Commissioner Minutes | 76 |
| Park County BOCC Minutes, 10/09/07 | 80 |
| Audio Recording, BCC Meeting, 10/09/07 | 83 |
| Resolution 2007-72 | 84-87 |

In Gilbert's supplemental designation, he repeats some of the above designations and adds the following:

Because review of an agency decision is "whole record review" (W.S. § 16-3-114(c)), Gilbert submits that the Court should review the entire record. The following designation pertains to the Administrative Record, pursuant to the Second Supplemental Index. Specifically, Gilbert cites to the following:

| | ITEM NO/PAGES |
|---|---|
| Letter from Attorney Scott to BOCC | 39-40 |
| Audiocassette Tape, January 3, 2006 | 51 |

**28**

The following designation pertains to the District Court Clerk Record.

|  | ITEM NO/PAGES |
|---|---|
| Brief of Petitioner, Bruce Gilbert | 0020-0039 |
| Motion to Supplement the Record | 0040-0041 |
| Order Allowing Supplementation of the Record and Allowing Supplementation of Petitioner's Opening Brief | 0042-0043 |
| Supplemental Brief of Petitioner, Bruce Gilbert | 0046-0056 |
| Supplemental Brief of Respondent | 0119-0149 |

In addition, the Park County Clerk transmitted the following items listed on her several indices and they are in this record:

| DATE | PAGE | TO | FROM | SUBJECT |
|---|---|---|---|---|
| 01/17/06 | 1-3 | | | **RESOLUTION 2006-05** |
| 07/18/05 | 4 | | | Application fee-Receipt # 5548 |
| 08/04/05 | 5-6 | Bo Bowman, Planning Coordinator | Bruce Gilbert | Reques t to keep zoning as is with application fee for variance to extend LUC-59 |
| 08/09/05 | 7-10 | | | Proof of ownership: Warranty Deed 2005-319 |
| | 11-12 | | | Location Maps |
| 08/29/05 | 13 | Meeteetse Advisory Board | Bo Bowman, Planning Coordinator | Information about variance |
| 08/29/05 | 14 | Bruce Gilbert | Bo Bowman, Planning Coordinator | Response to Variance request |
| 08/30/05 | 15 | | | Certified mailing list to neighbors for P & Z Variance Request Public Hearing on September 27, 2005 |
| 09/03/05 | 16 | Bo Bowman, Planning Coordinator | Don & Julie Walter | Opposition to extending the current zoning designation |
| 09/09/05 | 17 | | | Notice of P & Z Public Hearing Postponement |
| 09/12/05 | 18 | Bo Bowman, Planning Coordinator | Don Wolfe | Opposition to extending the current zoning designation |
| | 19 | Don Wolfe | Bo Bowman, Planning Coordinator | Response to email of 09/03/05 |
| 09/13/05 | 20 | | | Notice of P & Z Public Hearing for September 27, 2005 |
| | 21-25 | | Bo Bowman, Planning Coordinator | Staff Report for October 18, 2005 P & Z Meeting |
| | 26 | | | Park County Land Use Classification: LIM |
| 10/25/05 | 27 | | | Certified mailing list to neighbors for BCC Variance Request Public Hearing on November 15, 2005 |
| 11/02/05 | 28 | Bruce Gilbert | Bo Bowman, Planning Coordinator | Scheduling information |
| 11/02/05 | 29 | Bo Bowman, Planning Coordinator | Leon & Pauline Placzkowski | Opposition to allow extension date of LUC-59 |
| 11/08/05 | 30 | Bo Bowman, Planning Coordinator | Mike May, Chairman Meeteetse Advisory Board | Request for meeting |
| 11/09/05 | 31-32 | BCC | Bo Bowman, Planning Coordinator | Memo: Information on variance |
| | 33 | | | Notice of BCC Public Hearing for November 15, 2005 |
| 11/15/05 | 34 | | | P & Z Resolution # 2005-54 |
| 11/17/05 | 35-36 | Bo Bowman, Planning Coordinator | Bobby Joe Long | Concerns to be presented to BCC |

| Date | Pages | From | To | Description |
|---|---|---|---|---|
| 11/17/05 | 37-38 | Bo Bowman, Planning Coordinator | Bobby Joe Long | Additional concerns to be presented to BCC |
| 11/21/05 | 39-40 | BCC | Dawn Scott, Bonner Stinson, P.C. | Legal issues |
| 11/28/05 | 41 | BCC | Bo Bowman, Planning Coordinator | Memo: Information on variance |
| 12/08/05 | 42 | | | Mailing to neighbors for Reopened PH January 3, 2006 by regular mail |
| 12/27/05 | 43-45 | BCC | Dawn Scott, Bonner Stinson, P.C. | Affidavit of William Spuhl |
| 12/30/05 | 46 | Bo Bowman, Planning Coordinator | Don & Julie Walter | Request to deny extension of LUC-59 |
| | 47 | | | Copy of ATF license for Bill Spuhl |
| | 48 | | | Notice of Reopening Public Hearing for January 3, 2005 |
| | 49 | | | TAPE 1 |
| | 50 | | | TAPE 2 |
| | 51 | | | TAPE 3 |
| | 52 | | | Tape 4 |
| | 53 | | | Tape 5 |
| | 54 | | | Tape 6 |
| | 55 | | | Tape 7 |
| 12/06/05 | 56-66 | | | BCC minutes, 12/06/05 |
| 01/03/06 | 67-75 | | | BCC minutes, 1/03/06 |
| 01/10/06 | 76-79 | | | BCC minutes, 1/10/06 |
| 10/09/07 | 80-82 | | | BCC minutes, 10/09/07 |
| | 83 | | | Audio recording, BCC meeting 10/09/07 |
| 10/16/07 | 84-87 | | | BCC Resolution 2007-72; redeliberations |

[¶ 18]   Gilbert complains in his appellate briefing that the record before us is incomplete and insufficient for purposes of our review.   In particular, he points to one of the three audio cassette tapes, concerning the proceedings on January 3, 2006, and notes that it contains only part of that proceeding, the rest of the tape having been taped over by other board proceedings unrelated to him. He also notes that no audio cassette tapes were submitted for the December 6, 2005, meeting and the January 10, 2006, meeting at which the Board announced its decision.   He also criticizes the Board's minutes as being inaccurate in some respects and not informative.   He argues that such an insufficient record hampers any assessment of the reasonableness of the Board's action.   We note that if an appellant is concerned that no report of the evidence or proceedings at a hearing was made, or if a transcript is unavailable, then appellant may prepare a statement of the evidence or proceedings from the best available means including appellant's recollection.   W.R.A.P. 3.03.   While Gilbert did not pursue that opportunity, we observe that in his appellate briefing there are several instances in which his counsel inserts his recollection of the discussions of some board members.   We also observe that both counsel in their respective briefing have set out their statements of the case and statements of the facts with appropriate references to the record.   Having considered Gilbert's concerns and carefully reviewed the designated record, we are satisfied that we have a sufficient record consisting of the appropriate Board's documents relating to the Board's action and its basis for purposes of our judicial review.

**C. What is the effect of Gilbert's failure to appeal the Planning Coordinator's decision that Gilbert needed to request a variance.**

[¶ 19] Gilbert and the Board present argument on whether Gilbert needed to request a variance in the first place. Gilbert maintains that at the first hearing before the Board on November 15, 2001, he indicated that a variance was unnecessary because he and his counsel had realized, shortly before that hearing, that Spuhl's business activities on the property had been substantially advanced so that the LUC–59 designation was not subject to expiration. Gilbert offered to stop his presentation unless the Board wanted to hear how he could also satisfy the requirements for a variance. The Board's chairperson told Gilbert that the Board did not know where it was going with that, so Gilbert should cover the variance requirements. In response, Gilbert presented evidence and argument on both matters. He asserts that his variance request and presentation was made in the spirit of caution and compliance, but not of necessity. The Board, however, is of the view that whether a variance was required in the first place is essentially irrelevant. It argues that Gilbert requested a variance, paid $300.00 for that application, and set into motion the procedure that the Board followed at the hearings. The Board claims that the Planning Coordinator's July 2005 letter informing Gilbert that he needed to request a variance in order to extend the expiration of the LUC–59 designation constituted a decision and, therefore, Gilbert should have appealed that decision to the Board as provided in the provisions of the 2000 Zoning Resolution. In response to that claim, Gilbert contends that the July 2005 letter was not a formal decision on whether Spuhl's business activities on the property had failed to substantially advance the LUC–59 designation.

[¶ 20] The significance of the parties' argument on this issue is simply whether our judicial review should concern only the Board's decision that Gilbert failed to satisfy the variance standards or, instead, should also include whether a variance request was necessary at all. From our reading of the Board's decision, Resolution # 2007–72, it is clear that both matters were before the Board, and, therefore, our judicial review shall include both matters.

**IV. Substantive Issues**

**A. Whether the Board's decisions, contained in Resolution # 2007–72, that a variance was necessary and that Gilbert had failed to show that the variance standards were met, are supported by substantial evidence.**

[¶ 21] Mindful of our substantial evidence test referred to earlier in this opinion, we have reviewed the entire record in this case and the Board's Resolution # 2007–72. From that review, it is clear to this Court that the Board was presented with and considered conflicting evidence concerning both whether a variance was necessary and whether Gilbert had shown that the variance standards were met. The conflicting evidence, as well as the arguments based on that evidence, served both issues. It is also clear that the Board's Resolution # 2007–72 effectively answered both issues. The Board weighed the conflicting evidence and arguments and determined those issues adversely to Gilbert. We have carefully considered Gilbert's appellate argument, but we are satisfied that the Board's decisions are supported by relevant evidence which a reasonable mind might accept in support of those decisions. We hold that the Board's Resolution # 2007–72 is supported by substantial evidence.

**B. Whether the Board's decisions, contained in Resolution # 2007–72, that a variance was necessary and that Gilbert had failed to show that the variance standards were met, are arbitrary and capricious.**

[¶ 22] Mindful of our arbitrary and capricious test referred to earlier in this opinion, we have reviewed the entire record in this case and the Board's Resolution # 2007–72. That test requires only that a rational basis exist for the agency's decisions. As we have previously noted, the Board was presented with conflicting evidence and argument on the issues before it. No doubt there was room for two opinions to be derived from that conflict; however, an honest difference of opinion will not support a finding of arbitrariness and capriciousness. *Henderson v.*

*City of Laramie,* 457 P.2d 498, 502 (Wyo. 1969). We have carefully considered Gilbert's appellate argument, but we are satisfied that the Board's decisions adverse to his positions on the issue were not in disregard of the facts and circumstances of the case. We hold that the Board's Resolution # 2007–72 was not an arbitrary or capricious action.

[¶ 23] For all of the above and foregoing reasons, we affirm the Board's Resolution # 2007–72.